# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                                                        19-CR-1991JB

**ANTONIO CARRILLO,**

    **Defendant.**

## DEFENDANT ANTONIO CARRILLO'S OPPOSED MOTION TO DISMISS INDICTMENT

Defendant Antonio Carrillo, by and through undersigned counsel, Marshall J. Ray, and pursuant to Fed. R. Crim. P. 12(b), submits this Motion to Dismiss Indictment. As a matter of statutory construction and of constitutional law, the act that the Government alleges Mr. Carrillo committed, even if accepted as true, does not constitute a crime, but rather protected speech under the First Amendment of the United States Constitution. A Jury is not permitted to decide the legal questions presented in this motion (i.e., whether the conduct alleged was constitutionally protected). In support of this motion, Defendant states:

**I.    BACKGROUND.**

On July 9, 2019, the Grand Jury returned an indictment against Mr. Carrillo charging him with one count of transmitting in interstate or foreign commerce a communication containing any threat to kidnap any person or any threat to injure the person of another, in violation of 18 U.S.C. § 875(c). The sole substantive paragraph of the Indictment states:

> On or about June 19, 2019, in Valencia County, in the District of New Mexico, the defendant, ANTONIO CARRILLO, knowingly and willfully did transmit in interstate commerce via Facebook, and interstate social media company, a communication, specifically a social media post, to the American Civil Liberties Union, and the communication contained a threat to injure American Civil Liberties Union Personnel.

Doc. 10. The social media post in question, as disclosed by the United States, was a comment on a Facebook thread, reading, in its entirety, as follows: "You Bitches Want a Physical Civil War.. I'm Game..I'll bring My Farm Implements and They will Never find your Bodies..AND for Fun I'll BURN Every ACLU Office in the State.. GO TRUMP GO.!" *See* Doc. 3 at 6 (original spelling and punctuation retained). The Facebook comment was not left on the ACLU's Facebook page, nor was a hashtag or other linking device added to direct the comment to ACLU personnel.[1]

The United States also has alleged that Mr. Carrillo made another similar posting on Twitter the within approximately an hour of the Facebook comment. The Twitter statement reads as follows: "@realDonaldTrump, YOU Say YOU are going to DEPORT Thousands.. People are Saying,; I'LL believe it when I see it..Personally When Civil War Starts.. I'm Going to Burn Down EVERY ACLU Office in New Mexico." Doc. 3 at 6. This posting from Twitter contains the phrase "@realDonaldTrump" which means the post is directed at a Twitter user called "realDonaldTrump."[2]

The Indictment's sole count is based entirely and only upon the above-referenced Facebook comment. The United States has not charged Mr. Carrillo for the Twitter post, though if it had so charged him for that post, the charge would suffer the same constitutional and statutory defects.

**II.   LAW REGARDING RULE 12 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.**

Rule 12 of the Federal Rules of Criminal Procedure permits a party to bring pretrial motions to seek relief with respect to certain issues that "can be determined without a trial on the merits." Fed. R. Civ. P. 12(b)(3). Pursuant to rule 12(b)(3), a motion may raise "a defect in the indictment or information, including . . . failure to state an offense." *Id*. at 12(b)(3)(B)(5).

---

[1] In many social media platforms, symbols and devices such as "#" and "@" or "tagging" may be employed to categorize portions of postings for easy retrieval, to direct postings at other persons or organizations, or to bring other organizations into a posting. The Facebook comment at issue in this case clearly contains no such devices.

[2] This is, in fact, the authentic Twitter handle of the President of the United States. *See* https://twitter.com/realDonaldTrump?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor (last retrieved on December 6, 2019).

### III. LAW REGARDING 18 U.S.C. § 875(c).

18 U.S.C. § 875(c) states, in relevant part: "Whoever transmits in interstate or foreign commerce any communication containing ... any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." Because the statute in question punishes speech, the Supreme Court of the United States and the Tenth Circuit have set forth multiple additional elements to assure that a prosecution brought under 18 U.S.C. § 875(c) does not result in the punishment of constitutionally protected speech.

Thus, "the statement itself must be one that a reasonable person in the circumstances would understand 'as a declaration of intention, purpose, design, goal, or determination to inflict [bodily injury] on another.'" *United States v. Heineman*, 767 F.3d 970, 972 (10th Cir. 2014) (quoting *United States v. Viefhaus*, 168 F.3d 392, 395 (10th Cir.1999); *see also United States v. Dysart*, 705 F.2d 1247, 1256 (10th Cir.1983). Additionally, "the threat must be a serious one, "as distinguished from words as mere political argument, idle talk." *United States v. Heineman*, 767 F.3d at 972 (internal quotation marks omitted). And critically, to distinguish between proscribable "true threats" and constitutionally protected speech, the Tenth Circuit in *Heineman* elaborated:

> We read [*Virginia v.*] *Black* [538 U.S. 343, 345, 123 S. Ct. 1536, 1540, 155 L. Ed. 2d 535 (2003)] as establishing that a defendant can be constitutionally convicted of making a true threat only if the defendant intended the recipient of the threat to feel threatened. The majority of the Court said that " '[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id*. at 359, 123 S.Ct. 1536. When the Court says that the speaker must "mean[ ] to communicate a serious expression of an intent," it is requiring more than a purpose to communicate just the threatening words. *Id*. It is requiring that the speaker want the recipient to believe that the speaker intends to act violently. The point is made again later in the same paragraph when the Court applies the definition to intimidation threats: "Intimidation *in the constitutionally proscribable sense of the word* is a type of true threat, where a speaker directs a threat to a person or group of persons with the *intent of placing the victim in fear of bodily harm or death.*" *Id*. at 360, 123 S.Ct. 1536 (emphasis added [by Tenth Circuit]).

*United States v. Heineman*, 767 F.3d at 978. To underscore the constitutionally required scienter requirement associated with this statute, the Tenth Circuit Pattern Jury Instruction for the related offense set forth in 18 U.S.C. 875(b) engrafts scienter requirements not expressly set forth in the statute. *See Criminal Pattern Jury Instructions for the U.S. Court of Appeals for the Tenth Circuit*, § 237 (2011 Edition, updated February 2018).

Subsequent to *Heineman*, the Supreme Court of the United States decided *Elonis v. United States*, 135 S. Ct. 2001, 2011, 192 L. Ed. 2d 1 (2015). *Elonis* involved a defendant convicted of violating 18 U.S.C. § 875(c) for making ongoing Facebook posts of rap lyrics depicting acts of violence against multiple persons, including the defendant's ex-wife. The Supreme Court overturned the conviction of the defendant in *Elonis* because the trial court permitted the case to proceed as a general intent matter. Reversing, the Supreme Court explained: "The mental state requirement must therefore apply to the fact that the communication contains a threat." *Elonis v. United States*, 135 S. Ct. at, 2011.

**IV.    THE VOID FOR VAGUENESS AND OVERBREADTH DOCTRINES.**

The "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903 (1983) (also citing *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). The Supreme Court of the United States has expressed, however, that of the two core

aspects of the void-for-vagueness doctrine (i.e. notice to ordinary people and prevention of arbitrary enforcement), the second is the "more important." *Kolender v. Lawson*, 461 U.S. at 358. In keeping with this principal, the Supreme Court in *Kolender* specified: "[W]e have recognized recently that the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Id.* (quoting *Smith v. Goguen*, 415 U.S. at 574). "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Kolender v. Lawson*, 461 U.S. at 358 (quoting *Smith v. Goguen*, 415 U.S. at 575).

Emphasis on the prevention of arbitrary enforcement, however, does not mean that notice is unimportant as a component of the vagueness doctrine. The fair warning component of the vagueness standard focuses on fairness to the targeted individual. It is a bedrock principle of criminal law that "'fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'" *United States v. Aguilar*, 515 U.S. 593, 600 (1995) (*quoting McBoyle v. United States*, 283 U.S. 25, 27 (1931). To meet this standard, a statute must provide "an ascertainable standard of guilt." *United States v. L. Cohen Grocery Co.,* 255 U.S. 81, 89 (1921). With respect to criminal statutes that sweep into First-Amendment-protected activity by proscribing and punishing speech, the Supreme Court has demanded particular scrutiny and precision in drafting. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99, 102 S. Ct. 1186, 1193, 71 L. Ed. 2d 362 (1982) ("The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."); *id*.at 499 ("Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is

whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.").

In addition to the void-for-vagueness doctrine, a statute is also unenforceable to the extent it is unconstitutionally overbroad. "In the first Amendment context … a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 130 S.Ct. 1577, 1580 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n. 6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)).

"[T]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).

### V.     ANALYSIS.

In this case, the law enforcement and prosecutorial arms of the United States have used their discretion to apply a statute to conduct that is constitutionally protected and clearly does not violate the statute upon which the government relies. The indictment's sole substantive paragraph does not cite the critical elements that must be proved. Moreover, the conduct that the Government alleges occurred, as set forth in the Criminal Complaint, and which the Government does not dispute constitutes the basis of the charge in the Indictment, is not even a crime under the bare text of the applicable statute. Next, the speech the Government seeks to punish here was constitutionally protected political speech in the form of on-line banter. Finally, the applicable statute is overbroad and unconstitutionally vague. For the foregoing reasons, the Court should dismiss the Indictment (Doc. 10).

**A. The Indictment Fails to Set Forth the Essential Elements of the Offense Charged.**

It is fundamental that in federal criminal prosecutions, "elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." *Jones v. United States*, 526 U.S. 227, 232, 119 S. Ct. 1215, 1219, 143 L. Ed. 2d 311 (1999). In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court of the United States held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*., at 490, 120 S.Ct. 2348. "In federal prosecutions, such facts must also be charged in the indictment." *United States v. Cotton*, 535 U.S. 625, 627, 122 S. Ct. 1781, 1783, 152 L. Ed. 2d 860 (2002).

In *United States v. Cotton*, the Supreme Court of the United States clarified that a defective indictment does not deprive a court of jurisdiction. Moreover, in *Cotton*, the Supreme Court rejected a defendant's challenge to his conviction and sentence where: (a) the defendant was charged in a superseding indictment for conspiring to distribute cocaine, without reference in the indictment to the quantity; (b) the defendant failed to object to any defects in the indictment at trial; (c) a jury convicted defendant; and (d) the Court sentenced defendant significantly above the statutory range commensurate with an unspecified quantity of cocaine. In light of those facts, the Supreme Court in *Cotton* held that, while the failure of the Government to include the drug quantity in the indictment at the trial level constituted plain error, the error did not affect substantial rights in light of the voluminous evidence of drug quantity presented to the jury. *See id.* at 525 U.S. at 631-34.

The stringency of the plain error test drove the outcome of *Cotton*.[3] Nevertheless, the core

---

[3] "Under that test, before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Johnson v. United States*, 520 U.S. 461, 466–467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *United States v.Olano*, 507

principles governing the charging process remain intact—namely, that all elements of a federal crime must be charged in the indictment and proved to a jury beyond a reasonable doubt, that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form," *United States v. Cotton*, 535 U.S. at 631, and a defendant may present challenges to defective indictments to the trial court. *See id*. Indeed, *Cotton* recognized that violation of these principles constitutes plain error. *See id*. at 632.

Here, the Indictment fails to allege elements that the Tenth Circuit has found constitutionally required: (i) that the defendant intended the recipient of the threat to feel threatened; (ii) "the statement itself must be one that a reasonable person in the circumstances would understand 'as a declaration of intention, purpose, design, goal, or determination to inflict [bodily injury] on another.'" *United States v. Heineman*, 767 F.3d 970, 972 (10th Cir. 2014) (quoting *United States v. Viefhaus*, 168 F.3d 392, 395 and (iii) that the defendant meant to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. *See United States v. Heineman*, 767 F.3d at 978. Instead of setting forth those essential elements of the charge, at best, the Indictment merely reflects general intent to send the communication:

> On or about June 19, 2019, in Valencia County, in the District of New Mexico, the defendant, ANTONIO CARRILLO, knowingly and willfully did transmit in interstate commerce via Facebook, and interstate social media company, a communication, specifically a social media post, to the American Civil Liberties Union, and the communication contained a threat to injure American Civil Liberties Union Personnel.

Doc. 10. This Indictment runs not only afoul of Tenth Circuit precedent, but also more recent guidance from the Supreme Court of the United States. Specifically, in *Elonis*, the defendant was indicted for making threats to injure various people, including his ex-wife,

---

U.S. 725, 732, 113 S.Ct. 1770). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." 520 U.S., at 467, 117 S.Ct. 1544 (internal quotation marks omitted) (quoting *Olano*, at 732, 113 S.Ct. 1770).

coworkers and patrons of his employer, police officers, an FBI agent, even a kindergarten class, in violation of 18 U.S.C. § 875(c). *Elonis*, 135 S.Ct. at 2007. The statute does not specify a *mens rea*. At trial, *Elonis* requested a jury instruction that "the government must prove that he intended to communicate a true threat." *Id.* The district court denied the request, instead instructing the jury to the effect that in order to convict, all they need to find is that defendant intended to make a statement which a reasonable person would foresee "as a serious expression of an intention to inflict bodily injury or take the life of an individual." *Id.* Elonis was convicted. *Id.*

In a 7-2 opinion with far-reaching consequences, the Supreme Court reversed the conviction. Chief Justice Roberts drew on a long line of *mens rea* cases to conclude that "wrongdoing must be conscious to be criminal." *Id.* at 2012 (quoting *Morissette v. United States*, 342 U.S. 246, 252 (1952)). "Federal criminal liability does not turn solely on the results of an act without considering the defendant's mental state. That understanding 'took deep and early root in American soil'…" *Id.* The Court held that the government must prove that Elonis intended his communication to be threat, and that it was error for the district court not to have given his requested instruction on *mens rea*. *Id.* at 2012.

The missing constitutionally-required elements are fatal and demand dismissal of the Indictment. The absence of these constitutionally required elements is not merely a matter of form and cannot be corrected other than by a Grand Jury.

**B. The Communication that the Government Seeks to Punish on Its Face Does not Constitute a Constitutionally Proscribable True Threat.**

The Government seeks criminally to punish this statement, made in a comment section on Facebook: "You Bitches Want a Physical Civil War.. I'm Game..I'll bring My Farm Implements and They will Never find your Bodies..AND for Fun I'll BURN Every ACLU Office in the State.. GO TRUMP GO.!" *See* Doc. 3 at 6. The Government has not provided the statements to which this

comment was a response, but Defendant was not speaking to the ACLU-this is clear on the face of the Exhibit accompanying the Complaint's affidavit. *See* Doc. 3.

"The First Amendment commands, "Congress shall make no law … abridging the freedom of speech." The government may violate this mandate in many ways … but ***a law imposing criminal penalties on protected speech is a stark example of speech suppression***." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) (emphasis added; citations omitted). "[T]he bedrock principle underlying the First Amendment…is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). The Supreme Court has declared that one of the gravest threats to First Amendment freedom of speech is a law that criminalizes protected speech. Mr. Carrillo was engaged in highly charged political rhetoric with other individuals –not ACLU staff. Furthermore, the statement facially is a reaction to the notion that others want a "civil war" and that Mr. Carrillo is ready for civil war. The comment then expresses support for President Donald Trump. As a matter of law, "the statement itself [cannot be one that a reasonable person in the circumstances would understand 'as a declaration of intention, purpose, design, goal, or determination to inflict [bodily injury] on another.'" *United States v. Heineman*, 767 F.3d at 972 (quoting *United States v. Viefhaus*, 168 F.3d at 395).

One individual's online argumentation style may not be to the Government's liking, but heated hyperbole of the kind identified in the Criminal Complaint is commonly found on all major social media platforms and is far from constituting a true threat to any "persons" (another necessary element of the statute being that the threat be to a person, see 18 U.S.C. § 875(c)). On its face, the post does not threaten any ACLU "persons" even if it makes a reference to burning ACLU property in the event of a civil war. The mention of burning all of the ACLU offices in the State is not even a reasonably realistic one. It was clearly hyperbolic. The Government does not get to say, "Close enough" and level a felony charge at a person engaged in protected speech it does not like.

It should give the Court great pause to consider that the Tenth Circuit in *United States v. Heineman* reversed the 18 U.S.C. § 875(c) conviction of a defendant who made a much more pointed, inflammatory statement-- directed through email at a named target. The Tenth Circuit described the facts of that case as follows:

> The first two e-mails did not contain threats, but the third made the professor fear for his safety and the safety of his family. Entitled "Poem," Aplt.App., Vol. 1 at 89, it began by addressing the professor by his first name, and contained the following language:
>
> > Come the time of the new revolution
> > we will convene to detain you
> > And slay you, by a bowie knife shoved up into the skull from your pig chin
> > you choke, with blood flooding in your filthily treasonous throat!
> > We put the noose ring around your neck
> > and drag you as you choke and gasp
> > The noose laid on the tree branch
> > and the fate hath conferred justice for Treason
> > You are a filthy traitor along the horde of anti-American and anti-Whitey comrades
> > whose justice shall come to be delivered
> > To fuck the traitors, for justice!
> > fuck Mexico! fuck South America!
> > Fuck your soul to Hell!
> > Into the furnace pool of MexiShit as the filthily traitorous asshole and puta!
>
> *Id*. at 90. Law-enforcement officers traced the e-mail to Defendant through his e-mail address, which had the user name "siegheil_neocon." Id. at 91. When officers contacted him in writing, he responded immediately, "Is this about the email?" *Id*. He was charged in the United States District Court for the District of Utah with one count of sending an interstate threat, in violation of 18 U.S.C. § 875(c).

*United States v. Heineman*, 767 F.3d at 971–72.

The United States falls far short in this case. The statement the Government wishes to criminalize is constitutionally protected. The Court should therefore dismiss the Indictment inasmuch as the Indictment is based on the statement set forth in the Criminal Complaint.

### C. The Statute as Issue is Overbroad and Vague Because it Sweeps in Substantial Lawful Conduct, Does Not Put Would-be Violators on Notice of What Is Illegal, and Encourages Abuse by Law Enforcement of Unpopular Speakers.

The Courts across the country have struggled mightily to rescue 18 U.S.C. § 875(c), mostly by adding elements that the statute does not provide because, on its face, as written, the statute is grossly overbroad. The Supreme Court in *Elonis* took some steps to solidify a constitutional reading of the statute, but the fact remains that much lawful is illegal under the seemingly broad language of the statute. In the modern era, online debates are fierce. The President of the United States himself issues extremely strong (some would argue hyperbolic) rhetoric from his Twitter account. A statute that criminalizes such activity is an overbroad statute, yet by its terms 18 U.S.C. § 875(c) seeks such criminalization.

As for vagueness, this prosecution exemplifies how the statute as currently drafted invites law enforcement officials to selectively go after particular unpopular viewpoints, given the rough-and-tumble rhetoric that emits from all sides of a given debate on the Internet. The Court should not enforce a statute against Defendant given that it proscribes such a large swath of legal speech activities and given that the speech being addressed in this case is, on its face, lawful.

## VI. CONCLUSION.

The Indictment in this case fails to plead essential elements and is therefore fatally defective. Furthermore, the speech upon which the government relies to bring this criminal case is, on its face, constitutionally protected. Dismissal is therefore required in this case.

WHEREFORE, Defendant Antonio Carrillo respectfully requests that the Court dismiss the Indictment and that it order whatever other relief the Court deems appropriate.

Respectfully Submitted,

LAW OFFICES OF MARSHALL J. RAY, LLC

<u>/s/ *Marshall J. Ray*</u>
Marshall J. Ray
201 Twelfth St. NW
Albuquerque, NM 87102
(505) 312-7598

## **CERTIFICATE OF SERVICE**

 I hereby certify that on the 13th day of December 2019, I filed the foregoing pleading via CM-ECF, causing all registered parties to be served.

<u>/s/ *Marshall J. Ray*</u>
Marshall J. Ray