IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 19-CR-1991-KWR |
| | ) | |
| **ANTONIO CARRILLO**, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENSE MOTION TO EXCLUDE DEFENDANT STATEMENTS, MOTION IN LIMINE, AND NOTICE OF INTENT TO INTRODUCE EVIDENCE OF PRIOR BAD ACTS PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b) OR AS *RES GESTAE***

The United States is in receipt of defendant Antonio Carrillo ("Defendant")'s Motion to Exclude Defendant's Statements Regarding Law Enforcement, Lawyers, and Judges, Doc. 51. The United States opposes that motion, because Defendant's statements about the legal system are core evidence of his intent to threaten as charged in this case, and because those statements were made in the same conversation in which Defendant admitted that he meant to put employees of the American Civil Liberties Union ("ACLU") in fear with his threat to kill them by arson. Additionally, the United States gives notice Pursuant to Rule 16 of the Federal Rules of Criminal Procedure that it intends to introduce evidence of related bad acts pursuant to Federal Rule of Evidence 404(b) or as *res gestae*, and moves this Court to make pre-trial findings that such evidence may be introduced.

**I. Introduction.**

The evidence in this case tells of the wrath of Antonio Carrillo, and how his out-of-control temper caused him to threaten in interstate commerce to kill employees of the ACLU when he published to Facebook the message "You Bitches Want a Physical Civil War… I'm

Game… I'll bring My Farm Implements and They will Never find your Bodies.  AND for Fun I'll BURN every ACLU Office in the State…." Doc. 3 at 6 (complaint).  Defendant made that threat in the context of a Facebook discussion about the self-appointed "Constitutional Militia" members who had allegedly been kidnapping suspected illegal immigrants in the south of New Mexico, and the ACLU's work to advocate on behalf of the suspected illegal immigrants[1].

In response to that threat, and the related threat Defendant published to the President on Twitter (also contained in Doc. 3 at 6), Federal Bureau of Investigation ("FBI") Special Agent ("SA") Jordan Spaeth, along with Detective Rich Lewis from the Albuquerque Police Department ("APD"), went to Defendant's home in Valencia County to investigate the threat and determine Defendant's dangerousness and intent.  SA Spaeth and Det. Lewis approached Defendant's house and rang the doorbell.  In response, Defendant shouted "I hate cops!"[2]  He then demanded to know what the police were doing at his door.  Before the police could explain why they were there and what they wanted to talk about, Defendant spontaneously commented that he hated cops, judges, and lawyers, and believed they were all corrupt.  Ex. 1 at 2.  Defendant went on to explain how he had been hit in a traffic accident that he believed was not his fault, and that the driver of the car that hit him had been protected unfairly by a state judge.  *Id*. at 2 *et seq*.  The police asked if Defendant had been the one to send the now-charged Facebook message, and Defendant responded that he had, and explained that the reason he sent

---

[1] "A Militia Group Detained Migrants at the Border.  The ACLU Calls it Kidnapping."  CNN, article by Shiochet, Hackney, Sands, and Murphy, updated Friday, April 19, 2019. https://www.cnn.com/2019/04/19/us/border-militia-migrants/index.html.  *See also United States v. Larry Mitchell Hopkins, a.k.a. Johnny Horton, Jr.*,19-CR-1211-JB.
[2] Det. Lewis was wearing a personal audio recorder which captured this encounter.  The United States intends to enter the audio into evidence at trial.  A transcript of the audio is attached here as Exhibit 1 to this brief.

2

that communication was that "everything the ACLU does is promoting corruption within the United States." *Id*. at 2.

Still trying to determine whether Defendant's threat to kill ACLU members in an arson was a true one, Det. Lewis read the threatening post, and Defendant confirmed the statement expressed in the post was a true one. *Id*. at 3. Defendant said "it's wrong to commit murder except in war." *Id*. at 4. Then, when Det. Lewis asked him if he considered himself at war with the ACLU, he said "In a sense, yes." *Id*. Defendant said burning their building would be "possible." *Id*.

SA Spaeth asked Defendant if he needs help, if he needs to talk to someone about his anger. *Id*. at 6. Defendant said that SA Spaeth could help him prosecute corrupt judges, and then complained further that the police were not helping him pursue his complaint about Judge Sanchez. *Id*. Defendant spoke about "every time I write something like that," referring to the Facebook post in question, and said he writes things like that "[w]henever I get pissed off. Because I see the corruption in the world, and you guys don't seem to be doing a damn thing about it. You're protecting all of the corrupt judges. And how in the world are we supposed to get moral behavior in the United States when you guys don't have the guts to file charges against a corrupt judge?" *Id*. Defendant, when SA Spaeth asked if he had consulted attorneys about his complaints, said "I've talked to 16 attorneys and nobody will take my case because of the fact that I'm going after judges. And they don't want to ruin their careers to prosecute a judge… that's cowardness, man." *Id*. at 6-7.

Turning back to the effect his threat had on the ACLU, Det. Lewis and Defendant had the following dialogue:

> Det. Lewis: these people at the ACLU – ACLU up in Albuquerque, they're freaked out also.
> Defendant: Good.
> Det. Lewis: They're scared.
> Defendant: I want them to be afraid.

*Id*. at 7. Defendant claimed that, hypothetically, nobody would be hurt if he burned down the ACLU at night, but then was reminded by SA Spaeth that buildings have janitors that work at night. *Id*. at 11. Det. Lewis then reminded Defendant that some people work at their office late. *Id*. Defendant then asserted that he had filed the paperwork to give him a license to kill. *Id*. at 13.

## II. The Law.

Evidence is relevant, and therefore generally admissible, if it has any tendency to prove or disprove any material fact in dispute. *See* Fed. R. Evid. 401, 402. Relevant evidence is that which tends to "make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevant evidence is not confined to that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 936, 941 (2nd Cir. 1997). Instead, to be relevant, "evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *Id.*

An additional potential purpose to introduce the above-described facts at trial is as *res gestae* or intrinsic evidence. *Res gestae* or intrinsic evidence has been defined as those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense. *United States v. Sangiovanni*, No. CR

10-3239 JB, 2013 WL 1655918, at *10 (D.N.M. March 20, 2013) (Browning, J.) (citing *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). The Tenth Circuit has held that other act evidence is intrinsic when the evidence of the other act and the evidence of the charged crime are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged. *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011).

As noted by the *Sangiovanni* Court, the Tenth Circuit in *United States v. McVeigh*, 153 F.3d 1166, 1203 (10th Cir. 1999) described *res gestae* evidence as "inextricably intertwined with proper evidence." See *Sangiovanni*, 2013 WL 1655918, at *10. Quoting *Hardy*, 228 F.3d at 748, the Court went on to explain:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Id*. at *11.

"But even relevant intrinsic evidence must still satisfy the requirements of Federal Rule of Evidence 403: a district judge may exclude it 'if its probative value is substantially outweighed by a danger of . . . unfair prejudice.'" *United States v. Hood*, 774 F.3d 638, 644 (10th Cir. 2014) (citing Fed. R. Evid. 403). Tenth Circuit law "*favors* admission of all relevant evidence not otherwise proscribed; thus, exclusion under this rule [403] is 'an extraordinary remedy [that] should be used sparingly.'" *Irving*, 665 F.3d at 1213 (emphasis original) (quoting *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir.1999)). Evidence is not unfairly prejudicial simply because it is damaging to the defendant's case. *United States v. Martinez*, 938

5

F. 2d 1078, 1082 (10th Cir. 1991). "Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *Rodriguez*, 192 F.3d at 951 (emphasis added) (internal citations omitted). Even if the evidence were to adversely affect the jury's attitude toward the Defendant, such prejudice does not itself "substantially" outweigh its probative value. *See Irving*, 665 F.3d at 1213-14. Whatever prejudice stems from the relevant testimony can be moderated by cautionary instructions from the Court at the time of the admission of the evidence and, if requested, again in the final charge to the jury at the close of the case. *United States v. Record,* 873 F.2d 1363, 1376 (10th Cir. 1989).

Evidence that is not directly relevant to prove a material fact in dispute, and is not *res gestae* evidence, may nevertheless be admitted if it meets the requirements of Federal Rule of Evidence 404(b). Rule 404(b) permits the admission of evidence of "prior bad acts," unless they are offered "solely to prove a defendant's criminal disposition." *United States v. Naranjo*, 710 F.2d 1465, 1467 (10th Cir. 1983). Rule 404(b) is an inclusive rule and evidence of prior bad acts is to be admitted when it proves something other than criminal propensity and bad character, even if the evidence also demonstrates propensity. *See United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007) (*citing United States v. Cherry*, 433 F.3d 698, 701 (10th Cir. 2005); and *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001)). Generally, bad acts are offered to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). The Tenth Circuit employs a four-part test to determine if evidence is admissible under 404(b): (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether

6

the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Rule 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted. *United States v. Smalls*, 752 F.3d 1227, 1237 (10th Cir. 2014). And, like any evidence, Fed. R. Evid. 404(b) evidence must satisfy the Fed. R. Evid. 403 balancing test described above.

**III.     Analysis.**

The United States hereby gives notice that it intends to introduce evidence of 1) the Tweet directed to the President affirming a threat to burn down the ACLU, 2) the context of the charged threat, including the Facebook discussion regarding the alleged kidnapping of suspected illegal aliens, 3) the recording of the June 20, 2019 discussion between police and Defendant, including Defendant's statements that he does not trust or like judges, police, or lawyers, and 4) the transcript of the June 20, 2019 discussion (as a demonstrative exhibit, per the forthcoming jury instructions pertaining to English-language transcripts of English-language recordings).

**A.     The Evidence is Relevant.**

To prove Threatening Interstate Communications, the United States must prove beyond a reasonable doubt that the threat in question was intended to be taken as a threat or that the defendant knew it would be taken as a threat[3]. Here, Defendant's own statements made in the June 20, 2019 dialogue contain his explicit admission that he wants ACLU employees to be afraid. The dialogue also explains *why* he wants them to be afraid – because he believes their legal advocacy for potentially illegal immigrants makes them criminal and immoral. The

---

[3] Tenth Circuit Criminal Pattern Jury Instruction 2.37.1 (Feb. 2018), second element. *See also* Doc. 56, pp. 2-4, discussing the same.

dialogue further explains why he relies on threats of arson to make them afraid, rather than a lawsuit or other legal process – because he doesn't trust judges, lawyers, or police because of his history with civil litigation of a traffic accident involving Judge Sanchez, the police who refuse to arrest Judge Sanchez, and the 16 lawyers he consulted who he believes don't want to put their careers in danger by opposing a judge.

The dislike and distrust of legal and law enforcement professionals explains, and therefore makes more likely, the knowing and/or willful *mens rea* for the threat, through its explanation of why Defendant did not perceive himself to have legal recourse for his complaints about the ACLU. Defendant's views about the illegality and immorality of the ACLU, and their advocacy for potentially illegal aliens, explain, and therefore make more likely, that he intentionally targeted ACLU personnel (and not merely buildings, as he claimed) with his arson threat. In those ways, the contextual details of the Facebook post or thread in which Defendant made the threat, the statements of opinion about the ACLU's illegality and immorality, and the statements of distrust for police, lawyers, and judges, are all relevant evidence for the government's case in chief, and therefore generally admissible per Fed R. Evid. 402.

### B. The Evidence is *Res Gestae*.

Additionally, the contextual discussion of militia groups potentially kidnapping suspected illegal immigrants and the ACLU's criticism of those groups is *res gestae* evidence because it explains where and as part of what discussion Defendant made the charged threat. Defendant did not simply post his threat as a stand-alone Facebook status update – he posted it as part of a specific discussion of a topic of public interest and discourse. The story of the posting of the threat would not make sense without that context, such that the contextual evidence is

8

inextricably intertwined with the threat itself, and therefore admissible per *McVeigh* and *Sangiovanni*.

The June 20, 2019 interview is also *res gestae* evidence because it explains how the police investigated this threat and how it came to be before the jury for their review. Defendant complained truthfully when he said he was being investigated for his words, not his actions – 18 U.S.C. § 875(c) prohibits the threat itself, and no overt act to carry out the threat is required. As SA Spaeth said in that discussion, he wanted to know if Defendant would like social services or counseling for his anger issues, and SA Spaeth was trying to assess whether Defendant presented a true threat or whether he *was* merely engaging in hyperbole or political grandiosity on Facebook, as his attorney now argues. Because Defendant's theory of the case seems to be that the threats were not true threats but were rather hyperbolic, it is especially important the jury get to hear the true story of how SA Spaeth investigated that very question. The best record of that investigation is the audio recording the United States seeks to admit at trial, and the jury would be substantially assisted in assessing that rather long recording by a court-reporter-certified transcript thereof. The recording contains Defendant's direct admission that he wants ACLU personnel to be afraid, and the rest of the conversation is important context to that admission that makes it inextricably intertwined with direct evidence even if the Court finds that any given statement or question in that discussion is not direct evidence itself. The entire conversation is therefore admissible according to the reasoning of *McVeigh* and *Sangiovanni*.

The Tweet directed at the President is also *res gestae* because it was another instance of Defendant making a similar threat, on the morning of June 19, 2019, making it essentially part of the same course of conduct, also inextricably intertwined with the charged social media threat on

9

Facebook. The United States seeks its admission for that reason, even if the Court does not find that it is direct evidence of intent in the making of the charged threat.

      **C.     The Offered Evidence Meets the Requirements of FRE 404(b) and Does Not Run Afoul of Rule 403.**

The Tweet to the President is admissible under Rule 404(b) because it meets all four prongs of the *Smalls* test. First, it is offered for a proper purpose – to show Defendant's lack of mistake in his choice of words he uttered in the charged threat, and also his motive – to punish the ACLU for their advocacy for immigrants. In the Tweet, Defendant expressly connects the idea that thousands should be deported with his threat of arson against the ACLU. Second, it is relevant to his intentional choice of words and his motive – the Tweet corroborates his statement to police that he considers the ACLU illegal and immoral and therefore wants them to be afraid. Third, there is little to no danger of unfair prejudice, because the statement is so similar to the charged statement, and because of the availability of limiting instructions. Fourth, regarding those limiting instructions, the United States has not yet conferred about defense counsel regarding jury instructions, but expects to have extensive success in reaching an accord on the applicable instructions, and notes that every juror will follow an oath to follow the Court's instructions even if those instructions conflict with a previously-held opinion or belief, and the instructions are the best way to mitigate any risk of misuse of any given evidence.

The discussion with the police, and the various statements Defendant makes about his beliefs and opinions in that discussion, also meets the *Smalls* prongs. First, it is extremely probative of his motive and intent in making the threats – it explains why he dislikes the ACLU, why he distrusts the legal process to vindicate his constitutional and political views, and therefore why genuine and true threats of violence are the best recourse he can come up with.

Second, it is relevant because, as motive and intent evidence, it reveals no intent whatsoever to engage in hyperbolic or grandiose talk, joking, or other alternatives to true threats that defense counsel has proposed. It goes to the heart of the material facts in dispute here. Third (and fourth), any danger of unfair prejudice can and should be mitigated by an appropriate limiting instruction.

## IV.     CONCLUSION

In addition to the above arguments, the United States argues that each of Defendant's arguments made in his three-page motion to exclude are so cursory as to be forfeited. *See United States v. Elliott*, 684 F. App'x 685, 687 (10th Cir. 2017). Even if they are analyzed by the Court on the merits, however, the United States contends that the motion to exclude should be denied, and the notice of Rule 404(b) and *res gestae* evidence should be well taken, on the above analysis. The United States can also be available for a hearing if the Court would like to take evidence or hear oral argument on any of these topics.

For the foregoing reasons, the United States respectfully requests that this Court allow the above-described evidence to be offered in the prosecution's case-in-chief. The electronic filing of this document in CM/ECF caused a copy to be served electronically on Marshall Ray, Esq., counsel for Defendant[4].

---

[4] While this motion was being drafted and reviewed, Mr. Ray informed the United States that he had withdrawn as counsel, and that new counsel would be appointed. The United States has no reason to doubt Mr. Ray, but has not seen any such notice from the Court, and therefore does not know how to serve this document other than by filing it in CM/ECF as normal.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically filed January 22, 2020*
PAUL J. MYSLIWIEC
JAYMIE L. ROYBAL
Assistant United States Attorneys
Post Office Box 607
Albuquerque, New Mexico 87103
(505) 346-7274