# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                               **Criminal No. 19-1991 KWR**

ANTONIO CARRILLO,

        Defendant.

## **DEFENDANT'S MOTION FOR DISMISSAL OR SUPPRESSION OF EVIDENCE**

Defendant Antonio Carrillo, through his counsel, Donald F. Kochersberger III, hereby submits this Motion for Dismissal or Suppression of Evidence based on spoliation by the Government. In this case, the Government has destroyed evidence that would have otherwise been disclosable to Mr. Carrillo, was necessary to his defense, and would have been used to change the outcome of this case. Because the destroyed evidence was highly likely to alter the outcome of this case, destruction of the evidence constitutes a violation of Mr. Carrillo's due process rights. The Court should therefore dismiss the Indictment in this case, or in the alternative, exclude evidence of the Facebook post (and testimony related to that post) that forms the basis of the charges against him in this case. The United States opposes the motion. In support of this motion, Mr. Carrillo states as follows:

Background

Mr. Carrillo was charged in a July 9, 2019 Indictment with Interstate Communications with Threat to Injure Another in violation of 18 U.S.C. § 875(c). The basis of this charge is the Government's assertion that Mr. Carrillo posted a comment in a Facebook discussion, and that the post constituted a threat to the American Civil Liberties Union ("ACLU").

The Government has given notice that it intends to introduce "the contextual discussion of militia groups potentially kidnapping suspected illegal immigrants and the ACLU's criticism of those groups." [Doc. 60 at 8] In its Notice [Doc 60], the Government states that Mr. Carrillo posted his alleged threat as part of a specific discussion of a topic of public interest and discourse, and the story of the specific allegedly illegal posting is inextricably intertwined with the alleged threat itself so as to render it *res gestae. Id.* However, other than the one statement, alleged to be from Mr. Carrillo, contained in the Facebook post that forms the basis of this prosecution, the Government has disclosed zero evidence of any larger discussion surrounding that statement. No documentation of the discussion or conversations leading up to, or following, the one post allegedly made by Mr. Carrillo has been disclosed by the Government. On February 7, 2020, counsel sent a discovery letter to the United States Attorney's Office requesting this evidence. (See Exhibit A.) In response to that letter, the Government informed counsel that it has already provided Mr. Carrillo with all evidence in its possession. (See Exhibit B.) Without evidence of this larger discussion, and thus the context in which the post was made, Mr. Carrillo is unable to present evidence necessary to his defense. Mr. Carrillo therefore asks this Court to dismiss the charge against him in this case, or in the alternative, to exclude evidence of the single Facebook post (and testimony related to that post) that forms the basis of the charges against him in this case.

## Discussion

"The Supreme Court's jurisprudence divides cases involving nondisclosure of evidence into two distinct universes. *Brady* and its progeny address exculpatory evidence still in the Government's possession." *United States v. Folse*, 2018 U.S. Dist. LEXIS 196474, No. 15cr2485 JB (D.N.M. Nov. 19, 2018) Alternatively, "*Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, and *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528 (1984) govern cases in which the government no longer possesses the disputed evidence." *Id.* Under both *California v. Trombetta*

and *Arizona v. Youngblood* the remedy provided for the Government's violation a defendant's due-process rights is severe: "when evidence has been destroyed in violation of the Constitution, the court must choose between barring further prosecution or suppressing…the State's most probative evidence." *Id.*, *57 (citing *California v. Trombetta*, 467 U.S. at 487).

I. **The Government Violated Mr. Carrillo's Due Process Rights Under *Trombetta*.**

The Government violates a defendant's right to due process under *Trombetta* when: "(1) it destroys evidence whose exculpatory significance is apparent before destruction; and (2) the defendant remains unable to obtain comparable evidence by other reasonably available means." *United States v. Folse*, *57 (citing *United States v. Bohl*, 25 F.3d at 909-10). In this case, because the Government has violated Mr. Carrillo's right to due process under *Trombetta*, the Court must dismiss the Government's indictment.

Under the first prong of the *Trombetta* test, there is a violation of a defendant's due process rights when the Government destroys evidence "that might be expected to play a significant role in his defense." *United States v. Folse*, *58 (citing *California v. Trombetta*, 467 U.S. at 489). This Court has interpreted this requirement to equate to whether the evidence is so material that a defendant would not receive a fair trial without it. *Id.* In this case, among other things, the Government will be required to prove beyond a reasonable doubt that the Facebook post at issue was indeed a true threat, as opposed to hyperbole or mere political argument. *Watts v. United States*, 394 U.S. 705, 708, 89 S. Ct. 1399 (1969). In order to determine whether a communication constitutes a threat, rather than to hyperbole, mere political argument, or other non-threatening speech, the communication *must* be viewed in the context in which it is received. *See id.* (a statement that was made in jest in the context of a public political debate, expressly conditioned on an event that would never happen, is not a true threat). The Government itself has stated that

Mr. Carrillo "did not simply post his threat as a stand-alone Facebook status update – he posted it as part of a specific discussion of a topic of public interest and discourse" and that the context is inextricably intertwined with the post itself. [Doc. 60 at 8] The Government also stated that "the contextual details of the Facebook post or thread in which Defendant made the threat are relevant evidence for the government's case in chief." [Doc. 60 at 8] Moreover, because the evidence directly relates to an element that the Government must prove in its case in chief (that the communication was not exaggeration, hyperbole, or political speech), the missing evidence should certainly be expected to have played a significant role in Mr. Carrillo's defense. 10th Cir. Criminal Pattern Jury Instruction 2.37.

The circumstances of Mr. Carrillo's case also satisfy the second prong of the *Trombetta* test, because he is unable to obtain comparable evidence by other reasonably available means. The larger discussion and Mr. Carrillo's single allegedly criminal post have been taken down by Facebook, and Mr. Carrillo's Facebook account is no longer active. As explained above, in response to requests from defense counsel for the evidence, the Government has stated that it has already provided all its evidence to the defense. This evidence, however, did not include *any* evidence of the context of the Facebook post or the "discussion of a topic of public interest" in which the Government alleges Mr. Carrillo's communication was made. Accordingly, Mr. Carrillo has no means to obtain the evidence that the Government failed to preserve. He should not be required to accept the testimony of the Government's agents as the only evidence of the context and simply be required to take them at their word when, clearly, much superior documentary evidence once existed on which Mr. Carrillo could instead rely, if it were not for the destruction of that evidence by the Government. It's like recording an interview, destroying that recording, and then claiming law enforcement's reconstruction of the interview is fine.

If the Court finds that the Government violated a defendant's due process rights under *Trombetta*, the proper remedy is either to suppress evidence derived from the lost or destroyed material, or to dismiss the indictment. *United States v. Fletcher*, 801 F.2d 1222, 1225 n.3 (10th Cir. 1986). In determining the appropriate remedy for the violation, the Court should consider the prejudice that resulted to the defendant at trial. *Id.* Here, because the evidence that was destroyed was central to Mr. Carrillo's defense, the prejudice that he will suffer at trial as a result of its destruction is most severe. Accordingly, the Court should impose the harsher sanction of dismissal of the indictment against Mr. Carrillo.

## II. The Government Violated Mr. Carrillo's Due Process Rights Under *Youngblood.*

Because the Government also violated Mr. Carrillo's right to due process under *Arizona v. Youngblood*, *Youngblood* provides an additional basis on which dismissal or suppression is warranted in this case, in the event the value of the missing material is not clearly exculpatory, as described above. "If the exculpatory value of evidence that the United States failed to preserve is 'indeterminate,' then the defendant must show: (i) that the evidence was 'potentially useful' for the defense"; and (ii) "that the government acted in bad faith in destroying the evidence." *Folse* at *60 (citing *United States v. Bohl*, 25 F.3d at 910 (quoting *Arizona v. Youngblood, 488 U.S. at 58*)). Evidence is potentially useful if it "might have exonerated the defendant." *Id.* A defendant who asserts that the prosecution violated his due-process rights by failing to preserve merely potentially exculpatory evidence may prevail under *Arizona v. Youngblood* if he demonstrates" that the prosecution's failure to preserve the evidence was done in bad faith." *Id.*

When determining whether the Government failed to preserve evidence in bad faith, the Court should first consider "whether the government was on notice of the potentially exculpatory evidence, and whether the potential exculpatory value of the evidence is based on more than mere

5

speculation or conjecture." *Folse* at 61-62 (citing *United States v. Bohl*, 25 F.3d at 911). Next, the Court should consider "whether the government had 'possession or the ability to control the disposition' of potentially exculpatory evidence at the time the government is put on notice to its existence." *Id.* (citing *Bohl* at 912). Third, the Court must consider whether the evidence "was central to the government's case." *Id.* (citing *Bohl* at 912). As each of these considerations is met here, the Court should find that the Government necessarily acted in bad faith in failing to preserve the evidence in this case.

First, there can be no reasonable dispute that the Government was on notice of the potentially exculpatory nature of the missing evidence. The fact that the singular Facebook post in question has clear political overtones and, as admitted by the Government, was posted as "part of a specific discussion of a topic of public interest and discourse" provides ample notice that the evidence was, at the very least, potentially exculpatory. [Doc. 60 at 8]. This is particularly true given the Government's admitted awareness that it was/is required to prove that the allegedly criminal communication was not political hyperbole or political argument. See Doc. 60 at 9 (explaining that the agent "was trying to assess whether Defendant presented a true threat or whether he was merely engaging in hyperbole or political grandiosity on Facebook").

Second, the Government clearly had possession of the missing evidence at some point. In its motion in limine, the Government provides a description of the context of the allegedly criminal post and states that it was not made "as a stand-alone Facebook status update" and that it was "part of a specific discussion of a topic of public interest an discourse." [Doc. 60 at 8]. Obviously, the Government would not have the ability to provide these details if it had not actually viewed the context of the post and had possession of this contextual evidence at the time, and therefore the Government had the unfettered ability to control its disposition while it was in its possession.

Finally, the evidence is plainly central to the Government's case. As stated by the Government itself, "the contextual details of the Facebook post or thread in which Defendant made the threat" as "relevant evidence for the government's case in chief." [Doc. 60 at 8] The Government itself argued that the context is inextricably intertwined with the post itself. Further, the missing evidence directly relates to an element that the Government must prove in its case in chief (that the communication was *not* exaggeration, hyperbole, or political speech). 10th Cir. Criminal Pattern Jury Instruction 2.37 (emphasis added).

Because each of these prongs has been met, the Court should find that the Government's destruction of the evidence was necessarily conducted in bad faith. Mr. Carrillo has shown that the evidence is both, at a minimum, potentially exculpatory and that the Government acted in bad faith in failing to preserve it, as required by the analysis announced in *Youngblood*. The Court must therefore remedy the Government's violation by either dismissing the indictment against Mr. Carrillo or excluding the evidence of the allegedly criminal Facebook post, as well as any testimony or other evidence related to its contents. Although these remedies are indeed severe, they are also the only two remedies that have been mandated by the Supreme Court in this circumstance. *United States v. Folse*, *57 (citing *California v. Trombetta*, 467 U.S. at 487) ("[W]hen evidence has been destroyed in violation of the Constitution, the court *must* choose between barring further prosecution or suppressing . . . the State's most probative evidence." (emphasis added)). In this case, because the evidence that was destroyed was undoubtedly central to Mr. Carrillo's defense, the prejudice that he will suffer at trial as a result of its destruction is as severe as prejudice can be. Accordingly, the Court should impose the harsher sanction of dismissal of the indictment.

## III. The Evidence Destroyed by the Government was admissible under Fed. R. Evid. 106.

"[T]he Rule of Completeness was designed to prevent the Government from offering a 'misleadingly-tailored snippet.' The Rule of Completeness warrants admission of statements in their entirety when the Government introduces only a portion of inextricably intertwined statements." *Lopez v. Delta Int'l Mach. Corp.*, 312 F. Supp. 3d 1115, 1144 (10th Cir. 2018). Rule 106 states: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." The advisory committee notes to Rule 106 state that one of the considerations for this Rule is to avoid the misleading impression created by taking matters out of context.

In determining whether another portion of a statement must be admitted under Rule 106, the Court should consider whether "(1) it explains the admitted evidence, (2) places the admitted evidence in context, (3) avoids misleading the jury, and (4) insures fair and impartial understanding of the evidence." *United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010). The "[p]ortions of a statement or writing which are relevant to an issue in the case and necessary to clarify or explain the portion already received need to be admitted." *Id.* In this case, introduction of evidence of the context of the singular Facebook post that forms the basis of the Indictment would fulfill all four of these considerations identified by the Tenth Circuit.

Here, the Government has not only admitted, but has itself argued that the context of the alleged criminal Facebook post at issue in this case is inextricably intertwined with the post itself. In its motion in limine, the Government specifically claimed that "the contextual details of the Facebook post or thread in which Defendant made the threat" is "relevant evidence for the government's case in chief." [Doc. 60 at 8] This is unavoidable because, at trial, the Government

will be required to prove, among other things, that the communication was not political hyperbole. The missing evidence is clearly central not only to the defense, but to the Government's case in chief, as the context is inextricably intertwined with the allegedly criminal post itself, and also because the missing evidence directly relates to, and is the only evidence of, an element that the Government must prove in its case in chief (that the communication was not exaggeration, hyperbole, political speech, etc.). The Government recognizes this necessity in its motion in limine.

It is well established that, to determine whether a communication is a threat, the communication must be viewed *in the context in which it is received*. *See Watts v. United States*, 394 U.S. 705, 708, 89 S. Ct. 1399 (1969) (a statement that was made in jest in the context of a public political debate, expressly conditioned on an event that would never happen, is not a true threat); *United States v. Spruill*, 118 F.3d 221, 228 (4th Cir. 1997) (when considering whether a statement is a threat, "context is important"). The communication "must be viewed using an objective standard - that is, whether 'an ordinary, reasonable person who is *familiar with the context of the communication* would interpret it as a threat of injury.'" *United States v. Spring*, 305 F.3d 276, 280 (4th Cir. 2002) (emphasis added); *Darby*, 37 F.3d at 1064.

Accordingly, the admission of the context of Mr. Carrillo's allegedly criminal post would necessarily be required in order to: (1) explain the meaning of the post, (2) put the post in context, (3) allow the jury to assess the intent of the poster; (3) avoid misleading the jury about the criminality of the poster's conduct, and (4) to insure a fair and impartial understanding of the post. At a minimum, the context of the allegedly criminal Facebook post would therefore be admissible under Rule 106 (and likely essential to the Government's case in chief, as well). The significant problem for the Defendant, of course, is that, because the Government failed to preserve this

contextual evidence, Mr. Carrillo is now unable to take advantage of the safeguards provided by the Rules of Evidence, thereby significantly hampering his defense. Although, under the circumstances, the Court cannot order the admission of this non-existent evidence at trial, it should also take this handicap to an adequate defense into account when determining the level of prejudice to Mr. Carrillo, and thereby the appropriate sanction for the Government's conduct.

## Conclusion

This Court should impose sanctions for spoliation by either the dismissal of the indictment or the suppression of the singular allegedly criminal Facebook post, and any related evidence and testimony from the agents regarding this post. The destruction of the specific evidence in this case is particularly troublesome because, without it, Mr. Carrillo loses the ability to defend his Constitutional First Amendment right to free speech. If the Government is permitted to destroy evidence that is relevant (and in this case, necessary) to a defendant's defense without a severe sanction, then these Constitutional protections for criminal defendants are rendered effectively meaningless.

WHEREFORE, Defendant Antonio Carrillo respectfully requests that this Court sanction the United States for destruction of exculpatory evidence by ordering the dismissal of the indictment or, alternatively, suppression of the allegedly criminal Facebook post and any testimony by government agents or others regarding the Facebook post at trial.

Respectfully submitted,

*/s/Donald F. Kochersberger III*

---
Donald F. Kochersberger III
320 Gold Ave. SW, Suite 610
Albuquerque, NM 87102
(505) 848-8581
(505) 848-8593 fax

*Attorney for Defendant Antonio Carrillo*

I HEREBY CERTIFY that on the 26th day of March, 2020, I filed the foregoing electronically through the CM/ECF system, which caused all counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

 Electronically Filed
Donald F. Kochersberger III
Attorney for Defendant



BUSINESS LAW  
SOUTHWEST LLC  
Business Law That Makes Business Sense ®

February 7, 2020  
**Via E-mail: Paul.Mysliwiec@usdoj.gov and  
Jaymie.Roybal@usdoj.gov**

Paul J. Mysliwiec  
Jaymie L. Roybal  
Assistant U.S. Attorneys  
201 Third St. N.W.  
Albuquerque, N.M. 87102

Re: *United States v. Antonio Carrillo*  
Case No. 19-cr-01991-KWR

Counsel:

      I am writing to you on behalf of Mr. Carrillo regarding the discovery you provided in this case. After reviewing the documents that you recently provided, it does not appear that the Government has provided any evidence of the FaceBook discussion to which you referred in the Government's motion in limine and notice of 404(b) evidence. These items are discoverable pursuant to Fed. R. Crim. P. 16(1)(E)(i) and (ii) as they are material to preparing the defense and the government apparently intends to use the evidence in its case-in-chief at trial. In addition, without knowing what the evidence actually consists of, Mr. Carrillo cannot intelligently respond to the Government's argument that the evidence constitutes *res gestae*. To be clear, all we have in discovery related to Mr. Carrillo's alleged criminal conversation is a brief cut-and-pasted snippet, presumably copied from FaceBook. Accordingly, please produce all evidence that constitutes the "contextual discussion of militia groups potentially kidnapping suspected illegal immigrants and the ACLU's criticism of those groups," and/or the "specific discussion of a topic of public interest and discourse" referenced by the Government in its motion in limine. [Doc. 60 at 8]. Additionally, please produce all other evidence of Mr. Carrillo's online activity gathered by the Government.

      Thank you for your attention to this important matter. Please feel free to contact me if you have any questions.

Sincerely,

BUSINESS LAW SOUTHWEST LLC



Donald F. Kochersberger III



320 Gold Ave. SW, Suite 610 | Albuquerque, NM 87102-3299 | 505.848.8581 | (f) 505.848.8593 | www.BusinessLawSW.com

# EXHIBIT A

# Donald Kochersberger

| | |
|---|---|
| **From:** | Mysliwiec, Paul (USANM) <Paul.Mysliwiec@usdoj.gov> |
| **Sent:** | Friday, February 7, 2020 2:41 PM |
| **To:** | Donald Kochersberger; Roybal, Jaymie (USANM) |
| **Subject:** | RE: US v. Carrillo |

Hello, Don,

    The US has given you the documents in the government's possession that are responsive to your requests.

Paul Mysliwiec

**From:** Donald Kochersberger <donald@businesslawsw.com>
**Sent:** Friday, February 7, 2020 2:17 PM
**To:** Mysliwiec, Paul (USANM) <PMysliwiec@usa.doj.gov>; Roybal, Jaymie (USANM) <JRoybal@usa.doj.gov>
**Subject:** US v. Carrillo

Paul and Jaymie,

Thank you for the discovery materials. The attached letter addresses some apparent deficiencies in the discovery that we have been provided to date. Thank you for your attention to this matter.

Don

DONALD F. KOCHERSBERGER III, ESQ.
MEMBER ATTORNEY
LITIGATION DEPARTMENT COORDINATOR



 

320 GOLD AVE. SW, SUITE 610
ALBUQUERQUE, NEW MEXICO 87102-3299
505-848-8581 (VOICE) 505-848-8593 (FACSIMILE)
505-702-8927 (DFK DIRECT FACSIMILE)
DONALD@BUSINESSLAWSW.COM (E-MAIL)
WWW.BUSINESSLAWSW.COM (WEB)



BUSINESS LAW SOUTHWEST, LLC IS A MEMBER OF LAWPACT®,
AN INTERNATIONAL ASSOCIATION OF INDEPENDENT BUSINESS LAW FIRMS.
www.LawPact.org

THE INFORMATION CONTAINED IN THIS TRANSMISSION MAY CONTAIN PRIVILEGED AND CONFIDENTIAL INFORMATION. IT IS INTENDED ONLY FOR THE USE OF THE PERSON(S) NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR DUPLICATION OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.

# EXHIBIT B