# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.                                1:19-cr-01991 KWR

ANTONIO CARRILLO,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss or Suppression of Evidence, filed on March 26, 2020 (**Doc. 67**).  Having reviewed the parties' pleadings, the Court finds that Defendant's motion is not well-taken at this time and, therefore, is **DENIED WITHOUT PREJUDICE**.

## BACKGROUND

On July 9, 2019, the Grand Jury returned an indictment charging Defendant with one count of transmitting in interstate or foreign commerce a communication containing a threat to injure the person of another, in violation of 18 U.S.C. § 875(c).

The indictment provides:

> On or about June 19, 2019, in Valencia County, in the District of New Mexico, the defendant, ANTONIO CARRILLO, knowingly and willfully did transmit in interstate commerce via Facebook, an interstate social media company, a communication, specifically a social media post, to the American Civil Liberties Union, and the communication contained a threat to injure American Civil Liberties Union Personnel.

**Doc. 10**.  The alleged threat was posted as a comment on a Facebook thread, and reads as follows:

> "You Bitches Want a Physical Civil War.. I'm Game..I'll bring My Farm
> Implements and They will Never find your Bodies..AND for Fun I'll BURN
> Every ACLU Office in the State.. GO TRUMP GO.!"

**Doc. 3 at 6** (complaint).  This post was disclosed to Defendant in discovery.  Defendant also

allegedly made the following post on Twitter publicly directed to @realDonaldTrump:

> "@realDonaldTrump, YOU Say YOU are going to DEPORT Thousands.. People
> are Saying,; I'LL believe it when I see it..Personally When Civil War Starts.. I'm
> Going to Burn Down EVERY ACLU Office in New Mexico."

**Doc. 3 at 6**. The indictment charges Defendant for the Facebook post, but not the Twitter post.

Defendant previously filed a motion to dismiss the indictment for failing to include the true

threat element and a motion for bill of particulars.  The Court denied the motions.  **Docs. 56, 68.**

## DISCUSSION

Defendant asserts that the Government destroyed evidence that was necessary to his

defense and violated his due process rights.  He seeks suppression of evidence or dismissal of the

indictment pursuant to *Trombetta* and *Youngblood*.  Specifically, he asserts that the Government

had in its possession the rest of the Facebook thread in which he was participating. Defendant

believes that this Facebook thread is necessary to provide context for his allegedly threatening post

and is necessary to show that his Facebook post did not contain a true threat.

## I.   Due Process and Destruction of Evidence.

The Due Process clause of the Constitution imposes a limited duty on the government to

preserve "evidence that might be expected to play a significant role in the suspect's defense."

*California v. Trombetta*, 467 U.S. 479, 488-89 (1984); *see also Arizona v. Youngblood*, 488 U.S.

51, 58 (1988)).  The Tenth Circuit has stated the elements of *Trombetta* and *Youngblood* claims as

follows:

> To qualify as constitutionally material…the evidence must: (1) "possess an
> exculpatory value that was apparent [to the police] before the evidence was

destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. 2528. In addition, "if the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense," then the defendant must also show (3) "that the government acted in bad faith in destroying  the evidence." *United States v. Bohl,* 25 F.3d 904, 910 (10th Cir.1994) (quoting *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)).

*United States v. Ludwig*, 641 F.3d 1243, 1253–54 (10th Cir. 2011).  Defendant bears the burden on *Trombetta* and *Youngblood* claims, and has the burden of asserting facts relevant to the elements at issue. *Id.*; *United States v. Parker*, 72 F.3d 1444, 1452 (10th Cir. 1995); *see also United States v. Glass,* 128 F.3d 1398 (10th Cir.1997) ("The defendant bears the burden of showing there are material facts in dispute, and an evidentiary hearing is only required when the motion to suppress 'raise [s] factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact… are in issue.").

The Government asserted that Defendant could obtain the desired Facebook posts by serving a Rule 17(c) subpoena on Facebook.  Therefore, the Government argues that Defendant cannot show that he is "unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489.  The Court agrees.

Defendant does not argue that Facebook would be unable to produce the desired Facebook posts. Rather, he argues that he does not have the burden to obtain them from Facebook.  However, Defendant bears the burden to demonstrate that he would be unable to obtain comparable evidence by other reasonably available means.  *United States v. Parker*, 72 F.3d 1444, 1452 (10th Cir. 1995); *United States v. Harry*, 816 F.3d 1268, 1278 n.3 (10th Cir. 2016) (Defendant must show he would be unable to obtain comparable evidence by other reasonably available means).  Here, as explained below, the Court concludes that a Rule 17(c) subpoena under these circumstances could be a reasonably available means to obtain the Facebook posts.  The Government asserts it would not

oppose a subpoena, and the parties have asserted no reason why one could not be issued.  Both parties agree that the information in the posts are admissible.  Therefore, the Court concludes that Defendant has not carried his burden to show that he cannot obtain the Facebook posts through reasonably available means.

Defendant also argues that this "comparable evidence" element is part of a *Trombetta* claim but not a *Youngblood* claim.  The Court disagrees.  The law as stated in *Ludwig*, *supra*, indicates that Defendant must show as part of a *Youngblood* claim bad faith in addition to the unavailability of comparable evidence.  Moreover, the Tenth Circuit has denied a "bad faith" *Youngblood* claim because a defendant had failed to show that he would be unable to obtain comparable evidence by other reasonably available means.  *United States v. Ludwig*, 641 F.3d 1243, 1253 (10th Cir. 2011) (discussing bad faith element and denying claim because evidence was available through Trooper's testimony); *Cannon v. Polk Cty./Polk Cty. Sheriff*, 68 F. Supp. 3d 1267, 1287 (D. Or. 2014) (*Trombetta* and *Youngblood* claims both require that comparable evidence is not available), *aff'd sub nom. Cannon v. Polk Cty.*, 702 F. App'x 527 (9th Cir. 2017).

Therefore, Defendant has failed to carry his burden to demonstrate that he would not be able to obtain the Facebook posts by other reasonably available means.  If Defendant wishes to pursue obtaining the Facebook posts, he may file a motion for a Rule 17(c) subpoena.  If Facebook fails to produce the relevant posts, Defendant may move for a *Trombetta/Youngblood* hearing and the Court will set this motion for hearing.

However, the Government intends to offer agent testimony at trial about the content of the Facebook posts.  At the hearing, Defendant will have to show why the agents would not be able to testify at trial about the Facebook posts, and why this testimony would not be evidence comparable to the Facebook posts themselves.  *See United States v. Ludwig*, 641 F.3d 1243, 1253 (10th Cir.

2011) (trooper testimony was comparable evidence to destroyed video); *United States v. Bloomgren*, 42 F. App'x 147, 151 (10th Cir. 2002) (destruction of fingerprint evidence potentially showing that others had access to rifle did not rise to level of *Trombetta* claim where other evidence, including testimony and photographs, showed that others had access to house and rifle); *United States v. Parker*, 72 F.3d 1444, 1452 (10th Cir. 1995) (Defendant could have called Trooper who was on scene to testify about what the missing video would have shown, and therefore Defendant's *Trombetta* claim failed).  At this time, Defendant has not shown why the testimony of the agents would not be "comparable evidence."

## II.    <u>Rule 17(c) Subpoena could be a reasonably available means to obtain the Facebook posts</u>.

This Court has often issued Rule 17 subpoenas to third parties where defendants seek specific documents or video evidence.  *See, e.g., United States v. Zepeda, Jr.*, 19-cr-1423, Doc. 32 (D.N.M); *United States v. Leon Raymond Sanchez*, 19-cr-589, Doc. 43 (D.N.M.).

The plain language of Rule 17(c) authorizes the court to "direct the witness to produce the designated items in court before trial or before they are to be offered in evidence," and once "the items arrive," to "permit the parties and their attorneys to inspect all or part of them."  Fed. R. Crim. P. 17(c).  Accordingly, a party seeking issuance of a subpoena *duces tecum* under Rule 17(c) must establish:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006) (quoting *Nixon*, 418 U.S. at 699-700).  In order to meet this burden, the moving party "must clear three hurdles: (1) relevancy;

5

(2) admissibility; and (3) specificity." *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (quoting *Nixon,* 418 U.S. at 700). It is insufficient that the requested evidence "may have some potential of relevance and evidentiary use." *Sellers,* 275 F.R.D. at 624. "The specificity requirement also prevents a subpoena *duces tecum* issued pursuant to Rule 17(c) from being used as a 'fishing expedition to see what may turn up.'" *Id.* (quoting *Bowman Dairy*, 341 U.S. at 221).

The Government does not oppose the issuance of a subpoena. Defendant asserts that he does not have access to his Facebook account, and the posts have been removed from public viewing by Facebook. However, he has not given any reason why the posts could not be produced by subpoena. Both parties appear to agree that the Facebook posts are admissible. Therefore, the Court sees no reason why a Rule 17(c) subpoena is not a reasonably available means for Defendant to obtain the relevant Facebook posts.

## CONCLUSION

The Court denies the motion without prejudice because Defendant has not yet shown that the Facebook posts are unavailable through a Fed. R. Crim. P. 17(c) subpoena. If Defendant moves for a Rule 17(c) subpoena and Facebook does not produce the relevant posts, then Defendant may renew this motion by seeking a *Trombetta/Youngblood* hearing. At that hearing, however, Defendant will have to show that the testimony of the agents who viewed the post is not "comparable evidence" to the allegedly destroyed Facebook posts.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss or Suppression of Evidence **(Doc. 67)** is **DENIED WITHOUT PREJUDICE** for reasons described in this Memorandum Opinion and Order.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE