IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                        Cr. No. 19-1991 KWR

ANTONIO CARRILLO,

    Defendant.

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS SUPERSEDING INDICTMENT**

The United States is in receipt of a motion by defendant Antonio Carrillo ("Defendant") requesting the Court 1) dismiss the superseding indictment, 2) hold an immediate trial on the now-superseded 18 U.S.C. §§ 875(c) charge, or 3) continue the trial but somehow not exclude the continued time for statutory speedy trial purposes, thereby functionally charging the time to the government. Doc. 114. The United States will briefly discuss Defendant's second and third requested remedies before focusing on the request that this Court dismiss the superseding indictment.

Defendant requests the Court "strike the [superseding indictment]" to require the government immediately (as in, on August 17, 2020) to try Defendant on the now-superseded 18 U.S.C. § 875(c) charge, but does not provide any legal mechanism by which the Court might do so. *See* D.N.M,-LR-Cr. 47.7 (a motion, response, or reply must cite authority in support of legal positions advanced). Defendant asserts, as part of this argument, that "the [superseding indictment] is not based on any newly-obtained evidence," Doc. 114, p. 4, but that assertion is false. The United States obtained evidence (in the form of pictures and witness statements) that Defendant posted the charged threat of arson to Facebook using a Toshiba laptop manufactured

1

in China shortly before obtaining the superseding indictment. Defendant alternatively requests a trial continuance "that should be attributed to the government," Doc. 114, p. 5, but again does not provide a legal mechanism by which he suggests the Court do so. *See* D.N.M,-LR-Cr. 47.7.

It appears that both these requested remedies have been addressed by the Court's order continuing trial and pretrial deadlines at Doc. 117. In that order, the Court noted that Defendant's filing of the instant motion, and the motion to exclude the government's expert witness, Doc. 107, toll the statutory speedy trial time per § 3161(h)(1)(D). The Court additionally found that the ends of justice are served in continuing trial to allow for full briefing on the pending defense motions, including adequate time for the Court to consider them once briefed, and potentially hold a hearing on contested facts or argument, such that statutory speedy trial is also tolled per § 3161(h)(7)(A). The Court also made the finding that not granting a continuance at this time "would make trial impossible or result in a miscarriage of justice," citing § 3161(h)(7)(A). Doc. 117, p. 3. Finally, the Court found only a continuance could provide counsel reasonable time necessary for effective preparation, taking into account due diligence, per § 3161(h)(7)(B)(iv). These findings are all firmly supported by the current record, and appear fully to address Defendant's alternate requested remedies. That leaves only the request to dismiss the superseding indictment for the Court to consider.

    I.    Legal Standards.

Two Supreme Court cases provide the legal framework for deciding pre-trial claims of prosecutorial vindictiveness. In the first of the two cases, *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), an inmate attacked his conviction on the ground that his sentence was the result of an explicit threat — later carried out — by the state prosecutor to bring more a serious charge if he did not plead guilty to the original charge. *Id*. at 358-59. It was undisputed that the new charge

was justified by the evidence, that the prosecutor possessed the evidence supporting the new charge at the time of the original indictment, and that the defendant's refusal to plead guilty to the original charge led to his indictment on the new charge. *Id*. at 359. Further, the prosecutor conceded that the new indictment was influenced by his desire to induce a guilty plea. *Id*. at 361.

The Court of Appeals found that this concession demonstrated that the prosecutor had acted vindictively in bringing the new indictment, but the Supreme Court disagreed. *Id*. Having acknowledged in previous cases that "the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system," *id*. at 361-62, the Court "has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty," *id*. at 364. The Court continued:

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." To hold that the prosecutor's desire to induce a guilty plea is an "unjustifiable standard," which, like race or religion, may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself.

*Id*. at 364-65 (citation omitted).

*Bordenkircher* was decided against a backdrop of cases involving alleged vindictive actions by judges and prosecutors in response to defendants' successful appeals. *See North Carolina v. Pearce*, 395 U.S. 711 (1969); *Blackledge v. Perry*, 417 U.S. 21 (1974). In those cases, the Supreme Court had adopted a "prophylactic rule" that when a higher sentence or a more serious charge follows a successful appeal, vindictiveness of the judge or prosecutor may

3

be presumed. The Court in *Bordenkircher* distinguished those prior cases on the ground that they arose from situations "very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power." 434 U.S. at 362.

Four years after *Bordenkircher*, in *United States v. Goodwin*, 467 U.S. 371 (1982), the Supreme Court again took up a claim of prosecutorial vindictiveness. Like in *Bordenkircher*, the defendant was indicted on more serious charges after plea negotiations failed, *id*. at 371, but unlike in *Bordenkircher*, the prosecutor in *Goodwin* had not warned the defendant during the negotiations that he would face enhanced charges if he did not plead guilty, *id*. at 382 n.15. The Court of Appeals distinguished *Bordenkircher* on this ground; it applied the "prophylactic rule" of cases involving *post*-trial vindictive action and adopted a presumption that a prosecutor has acted vindictively in bringing more serious charges after a defendant has invoked the right to a jury trial "unless the prosecutor comes forward with objective evidence to show that the increased charges could not have been brought before the defendant exercised his rights." *Id*. at 372.

The Supreme Court reversed. It began its analysis by noting that unlike in *Bordenkircher*, where the prosecutor had threatened the defendant with more serious charges if he insisted on going to trial, there was no evidence in *Goodwin* that could support a claim of *actual* vindictiveness. *Id*. at 380-81. Instead, the only ground on which to base a finding of vindictiveness was an inference drawn from the timing of events. Consequently, the conviction could be reversed "only if a *presumption* of vindictiveness — applicable in all cases — is warranted." *Id*. at 381.

The Court then resoundingly rejected such a presumption. In doing so, it distinguished

between a prosecutor adding new charges before trial and adding new charges after a successful post-trial challenge. When a defendant's exercise of a right results in the necessity of a new trial, it is appropriate to apply a presumption of vindictiveness to later charges because of (1) the immense burden on the prosecution of having "to do over what it thought it had already done correctly," *id*. at 383, and (2) the expectation that once a trial has begun, the government has generally "discovered and assessed all the information against an accused," *id*. at 381, and has decided what charges against him are proper. These conditions, however, are not present before trial:

> In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized.

*Id*. at 381. Nor do rights asserted by a defendant in the pretrial setting implicate "the institutional bias against the retrial of a decided question" present in the post-trial context. *Id*. at 383.

Indeed, as the Court went on to observe, "a defendant before trial is *expected* to invoke procedural rights that inevitably impose some 'burden' on the prosecutor." *Id*. at 381 (emphasis added). Doing so is a normal and "integral part of the adversary process." *Id*. In contrast to the relatively rare reversal of a conviction after trial, in the pretrial setting "[d]efense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury." *Id*. The Court concluded that "[i]t is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *Id*. Consequently, "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Id*. at 382.

Because "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution," *id*., "[an] initial decision should not freeze future conduct," *id*. The Court thus acknowledged that applying a presumption of vindictiveness as to pretrial charging decisions would be both unwarranted and costly.

Some selectivity in the decision to prosecute criminal offenses is constitutionally permissible and appropriate, and courts will normally tread lightly when reviewing that decision. *Wayte v. United states*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530 (1985). As long as the decision to prosecute is not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, the prosecutor's charging discretion remains unfettered. *See United States v. Sanchez*, 908 F.2d 1443, 1445 (9th Cir. 1990) (quoting *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524 (1985)).

II. Defendant Has Failed to Show Either Actual or Presumptive Vindictiveness.

A defendant alleging prosecutorial vindictiveness "has the burden of proof and must establish either (1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." *Raymer*, 941 F.2d at 1040. Vindictiveness would exist where the prosecutor has brought charges "not in the public interest that could be explained only as a penalty imposed on the defendant" in retaliation for his exercise of a protected right. *Goodwin*, 457 U.S. at 384. Only upon making such a showing does the burden shift to the government "to justify its decision with legitimate, articulable, objective reasons." *Raymer*, 941 F.2d at 1040. "If the defendant does not meet his burden of proof, however, the district court need not reach the government justification issue." *Id*. In this case, Defendant has failed to carry his burden. He has no evidence of actual vindictiveness, and he finds no support in the law for presumptive vindictiveness in the circumstances present here.

### A. Defendant Has Presented No Evidence of Actual Vindictiveness.

To prove actual vindictiveness, a defendant must come forward with "direct evidence, such as evidence of a statement by the prosecutor," that shows the decision at issue was motivated by an improper motive. *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 2000) (internal quotation marks omitted). "Without the presumption, the defendant faces the arduous task of proving that the prosecutor's actual intent was to punish and deter assertions of protected rights." *United States v. Doran*, 882 F.2d 1511, 1519 (10th Cir. 1989). A defendant must "affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication." *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006). The court must be convinced that the action would not have been taken "but for the government's animus or desire to penalize" the defendant for exercise of the protected right. *Id*. Because this type of evidence is available "only in a rare case," *Johnson*, 171 F.3d at 140, courts have recognized that a showing of actual vindictiveness is "exceedingly difficult to make." *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001).

Although Defendant's motion does not *concede* a lack of evidence of actual vindictiveness, Defendant has not made any attempt to carry this heavy burden. Doc. 114 at 3-4. He offers, for instance, no statement of the undersigned evidencing an improper motive in bringing the superseding indictment. Instead, in his two paragraphs of analysis in Doc. 114, Defendant complains only that the United States did not give Rule 16 notice of an expert witness and that witness' expected testimony related to the interstate nexus of the charged communication until after Defendant first indicated (contrary to earlier representations) that he would not stipulate to the interstate nexus element. *Id*. It is therefore clear that Defendant's

7

argument rests on an inference of vindictiveness rather than any direct evidence of it.

      B.      The Presumption of Vindictiveness Does Not Apply.

Without evidence of actual vindictiveness on the part of the undersigned, Defendant must rely upon a presumption of vindictiveness. To reiterate, Defendant's allegation is that the timing of events in this case demonstrates that the undersigned AUSAs obtained the superseding indictment in retaliation for (1) Defendant's choice to proceed to trial, and (2) Defendant's choice to contest interstate nexus of the charged Facebook post (and his communication of that choice only after the then-applicable deadline for witness lists had passed, after previously representing that he would stipulate to the interstate nature of the Facebook post).

Both of these bases for presuming retaliation are foreclosed by *Bordenkircher* and *Goodwin*. As discussed above, *Bordenkircher* and *Goodwin* affirm the legitimacy of bringing new charges against a defendant after the failure of plea negotiations so long as the new charges are not designed solely to punish the defendant for insisting on a trial — and they prohibit district courts from *presuming* that improper motive solely on the basis of timing. *Goodwin* also addressed the invocation of other types of procedural rights that defendants often "burden" the government with. Specifically mentioning motions to suppress (or, in this case, a "motion to strike" that actually seeks exclusion of an expert witness), *Goodwin* admonished that courts should not presume "that a prosecutor's probable response to such motions is to seek to penalize and deter." 457 U.S. at 381; *see also United States v. Noushfar*, 78 F.3d 1442, 1446 (9th Cir. 1996) (relying on *Goodwin* to conclude that moving to suppress evidence is "insufficient to create a presumption of vindictiveness"). And here, the United States notified the Court and the defense that it intended to supersede the indictment before Defendant filed the motion seeking to exclude the government's expert testimony.

The Tenth Circuit, recognizing that "the Supreme Court has generally rejected the presumption of prosecutorial vindictiveness in the pretrial context," *United States v. Lampley*, 127 F.3d 1231, 1245 (10th Cir. 1997), has consistently refused to apply such a presumption to pretrial charging decisions. In *United States v. Sarracino*, for instance, the defendant complained that after the failure of plea negotiations, the prosecutor obtained an indictment on a more serious charge using the same facts that were available at the time of the original indictment. 340 F.3d 1148 (10th Cir. 2003). The district court held that "the facts of this case appear to fall four-square within *Bordenkircher v. Hayes*," *id*. at 1177, and the Tenth Circuit agreed. Other defendants making the same argument — that the prosecutor retaliated with new charges after they exercised their right to trial — have met with the same result. *See, e.g.*, *Lampley*, 127 F.3d at 1245; *United States v. Vallo*, 238 F.3d 1242, 1249 (10th Cir. 2001) (no presumption where defendant alleged that new charges were punishment for refusing to plead guilty and for failing to provide information against a codefendant); *United States v. DeJohn*, 368 F.3d 533, 545 (6th Cir. 2004) ("when the right asserted by the defendant is simply the right to go to trial, an additional charge entered after a failed plea bargain cannot … form the substance of a viable vindictive prosecution claim"). Nor have defendants found success in attempting to distinguish their pretrial situations from those of *Goodwin* and *Bordenkircher*. The Tenth Circuit has stated that if a defendant presented pretrial circumstances that were "genuinely distinguishable from *Goodwin* and *Bordenkircher*," it would then look at the totality of the circumstances to determine whether a presumption was warranted in the particular instance. *Raymer*, 941 F.2d at 1040. The court has indeed followed a totality-of-the-circumstances approach in cases involving prosecutors bringing new charges after mistrials. *See, e.g.*, *United States v. Doran*, 882 F.2d 1511, 1521 (10th Cir. 1989). It has never, however, found the need to look beyond the mandate

of *Goodwin* and *Bordenkircher* in a purely pretrial scenario such as the one presented here. *Cf.* Wayne R. LaFave et al., 4 Crim. Proc. § 13.7(c) (3d ed.) (characterizing it as "unlikely" that the presumption "has any application whatsoever in a pretrial setting.").

In *United States v. Raymer*, 941 F.2d 1031 (10th Cir. 1991), which Defendant cites for the proposition that the Court must conduct a totality of the circumstances inquiry here, *see* Doc. 114 at 3, the Tenth Circuit did not consider the defendant's claims to be "genuinely distinguishable from *Goodwin* and *Bordenkircher*" and thus did not engage in such an analysis. *Id*. at 1042-43. The *Raymer* court rejected the defendant's claim that the presumption should apply where he had been charged federally only after resisting a state extradition proceeding and where new charges were brought after he obtained pretrial release over the government's opposition. *Id*. at 1039. Such a "presumptive inference is foreclosed completely by the Supreme Court's decisions in *Goodwin* and *Bordenkircher*," the court wrote. "[A] prosecutor's response to a defendant's decision to resist extradition is in the nature of those prosecutorial responses which do not warrant a presumption of vindictiveness." *Id*. at 1042. Similarly, the government's opposition to pretrial release is common, and "[e]ven if the government does not prevail, it is not reasonably likely that future prosecutorial decisions are punitive." *Id*. at 1043.

Allegations of vindictiveness following a defendant's assertion of a variety of other pretrial claims have met with the same result. *See, e.g.*, *United States v. Molina-Iguado*, 894 F.2d 1452, 54-55 (5th Cir. 1990) (right to proceed before district judge in a non-petty misdemeanor case); *United States v. Falcon*, 347 F.3d 1000, 1004-05 (7th Cir. 2003) (motion to exclude witness); *United States v. Saltzman*, 537 F.3d 353, 361 (5th Cir.2008) (successful withdrawal of guilty plea); *United States v. Frega*, 179 F.3d 793, 801 (9th Cir. 1999) (successful motion to dismiss count of indictment). Even allegations of prosecutorial misconduct have not been found

to fall outside of *Goodwin*. *United States v. Barner*, 441 F.3d 1310, 1319-20 (11th Cir. 2006) (motion to dismiss indictment for prosecutorial misconduct); *Falcon*, 347 F.3d at 1004-05 (motion to sanction prosecutor).

Here, Defendant's motion rests on the proposition that, by superseding the indictment at the first available grand jury after Defendant announced his change of position regarding interstate nexus, the government acted in a way that the Court should presume is vindictive. This is precisely the type of wild inference that *Goodwin* precludes. The Court should therefore deny the instant motion.

III. Defendant Is Not Entitled to a Hearing on His Unsupported Motion.

Defendant has not explicitly requested an evidentiary hearing on the instant motion. *See* Doc. 114. None is warranted. Only once a defendant has made a prima facie showing of vindictiveness — which Defendant has not done — should a court hold an evidentiary hearing. *Falcon*, 347 F.3d at 1004. Until Defendant has met his initial burden, the United States is not required to explain its charging decision. *Raymer*, 941 F.2d at 1040.

A prosecutor's charging decisions may be based on a complex array of factors, some of which may be sensitive, strategic, or confidential — such as the offense thresholds and charging policies of the United States Attorney's Office or the Department of Justice. Defendant should not become entitled to this information merely by virtue of filing a motion that he cannot support. The United States respectfully requests that only in the event that the Court first makes that threshold finding, the Court then allow the United States to provide at a hearing or through affidavit the information that would rebut a presumption of vindictiveness. Should the Court find that Defendant has successfully shifted the burden to the government, the United States would promptly provide additional information to establish the undersigned AUSAs' permissible

motives in bringing the superseding indictment.

IV. Conclusion.

For the foregoing reasons, the Court should deny Defendant's motion to dismiss the superseding indictment, and the United States respectfully requests that it do so without an evidentiary hearing. The filing of this motion response in CM/ECF caused a copy to be served on Donald Kochersberger, Esq., counsel for Defendant.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*electronically signed August 20, 2020*
PAUL J. MYSLIWIEC
JAYMIE L. ROYBAL
Assistant United States Attorneys
P.O. Box 607
Albuquerque, N.M. 87103
(505) 224-1413